UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KACIE LYNN KATHCART, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:19-CV-641 RWS |
| ANDREW M. SAUL,<br>Commissioner of<br>Social Security Administration | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Kacie Lynn Kathcart brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Social Security Commissioner's ("Commissioner") decision to deny her applications for disability insurance benefits and supplemental security income. Because the Commissioner's decision is supported by substantial evidence on the record as a whole, I affirm the decision.

**PROCEDURAL HISTORY**

On November 8, 2016, Kathcart filed a Title II application for disability insurance benefits. Then on November 18, 2016, she filed a Title XVI application for supplemental security income. These claims were initially denied on December 30, 2016. Kathcart then filed a timely request for a hearing on January 24, 2017.

1

The hearing was held on August 2, 2018, and the ALJ issued her decision denying the application on November 14, 2018. Kathcart timely appealed on November 29, 2018, and the Appeals Council affirmed the ALJ's opinion on January 22, 2019. Kathcart then timely filed this case seeking judicial review of the Commissioner's decision.

In this action for judicial review, Kathcart argues that the ALJ failed to fully and fairly develop the record with regard to her mental impairments and failed to assess her ability to sustain work activities in an ordinary work setting on a regular and continuing basis.

## MEDICAL RECORDS AND OTHER EVIDENCE BEFORE THE ALJ

With respect to the medical records and other evidence of record, I adopt Kathcart's recitation of facts set forth in her Statement of Material Facts [ECF Doc. No. 19, pp. 2-6] insofar as they are admitted by the Commissioner. I also adopt the additional facts set forth in the Commissioner's Response to Plaintiff's Statement of Material Facts [ECF Doc. No. 22-1], as they are unrefuted by Kathcart. Additional specific facts will be discussed as needed to address the parties' arguments.

## LEGAL STANDARD

To be entitled to disability benefits, a claimant must prove that they are unable to perform any substantial gainful activity due to a medically-determinable

physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(a). To determine whether claimants are disabled, the Commissioner evaluates their claims through five sequential steps. 20. C.F.R. § 404.1520; Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009) (describing the five-step process).

Steps one through three requires that the claimant prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Step four (4) requires the Commissioner to consider whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work . Id. at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her past relevant work. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to past relevant work, the burden shifts to the Commissioner at step five to show the claimant retains the RFC to perform other jobs that exist in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because I would have decided the case differently. See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## ALJ DECISION

The Administrative Law Judge ("ALJ") determined that the Kathcart was not under a disability as defined in the Social Security Act. First the ALJ found that Kathcart met the insured status requirements of the Social Security Act through December 31, 2022 and had not engaged in substantial gainful activity since November 4, 2016. The ALJ then determined Kathcart suffered from the

4

severe impairment of psoriatic arthritis, as well as several other impairments that are not severe, including depression, anxiety, irritable bowel syndrome, and carpal tunnel syndrome. But the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404. Accordingly, the ALJ had to next determine Kathcart's RFC and ability to work.

Based on her consideration of the record, the ALJ found that Kathcart had an RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) but with the following limitations: she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently and sit, stand, or walk for six hours in an eight-hour day; she is limited to frequent ramps and stairs, no ladders, ropes, or scaffolds, and frequent bilateral handling. Based on Kathcart's RFC, the ALJ found that she could perform her past relevant work as a loan officer and mortgage loan processor, as well as other jobs existing in sufficient numbers in the national economy. Accordingly, the ALJ denied Kathcart's applications because she found that Kathcart was not under a disability as defined in the Social Security Act.

## DISCUSSION

Kathcart's arguments focus on the ALJ's failure to develop the record regarding her mental impairments and on the ALJ's failure to consider her ability to performed sustained work activities on a regular and continuing basis.

Failure to Develop the Record

Kathcart first argues that the ALJ failed to fully and fairly develop the record. Specifically, she argues that the ALJ should have contacted her psychologist, Dr. Lipsitz, to get transcripts or clarification of the illegible records he provided. Instead, the ALJ relied on other information in the record to determine Kathcart's anxiety and depression were non-severe because they caused no more than mild limitations.

Given the non-adversarial nature of social security hearings, ALJs have a duty to fully and fairly develop the record. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). This duty applies even in cases where the claimant is represented by counsel. Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). Failure to develop the record is reversible error, but reversal is only warranted where the failure resulted in unfairness or prejudice to the plaintiff. Combs v. Astrue, 243 Fed. Appx. 200, 204 (8th Cir. 2007). Additionally, although the duty to develop the record may require the ALJ to seek additional medical records, they do not need to seek additional information unless a crucial issue is undeveloped. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). So long as other evidence in the record provides a sufficient basis for their decision, the ALJ does not need to seek additional evidence. Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, the ALJ's decision is supported by substantial evidence. In her opinion, the ALJ cited to ample evidence in the record. Tr. at 17-19. Additionally, the ALJ's opinion outlined her analysis under 20 C.F.R. §§404.1520a, 416.920a, which requires ALJs to consider four functional areas known as the Paragraph B Criteria. Tr. at 18-19. The ALJ briefly discussed the functional area of understanding, remembering, or applying information and determined based on Kathcart's testimony that she had no impairment in this area. Tr. at 18. The ALJ then discussed in depth her determination that Kathcart had only mild limitations in the remaining functional areas. Tr. at 18-19.

In making that determination, the ALJ considered Kathcart's reported difficulties with memory, concentration, understanding, and working with others, and then went on to analyze the other evidence in the record. Tr. at 17-19. The ALJ first considered evidence from Kathcart's treating providers. In considering notes from Kathcart's psychologist the ALJ stated that "[w]hile it appears the claimant has received some type of monthly counseling services that started in January of 2017, these records are illegible and do not appear to contain mental status examination nor prescribing information, suggestive that they are likely annotations of subjective reports with no clinical objective findings." Tr. at 17. The ALJ then went on to consider metal status exams performed by other treating physicians. Tr. at 17. As the ALJ notes, although Kathcart at times presented as

tearful, Tr. at 293, 305, and 563-64, her providers have consistently found her mood and affect to be normal.[1] Tr. at 293, 297, 300, 305, 376, 393, 432, 445, 465, 478, 490, 531, 538, and 563. In particular the ALJ focused on Kathcart's July 2, 2018 visit to her neurologist. At that appointment, Kathcart's neurologist performed a comprehensive mental status exam to address her concerns about memory loss. Tr. at 563. The neurologist noted that Kathcart was tearful throughout the exam and that she thought Kathcart's memory loss may be tied to her mood disorder but went on to find that Kathcart was alert and oriented, and her attention concentration, fund of knowledge and recent and remote memory were all intact. Tr at 563. The neurologist also offered to refer Kathcart to formal neuropsychological testing and for an MRI, but Kathcart refused. Tr. at 564. The ALJ also emphasized that Kathcart's records indicate that she did not require any specialized medication management through a mental health provider, Tr. at 17, and that her failure to follow through with specialized treatment indicated her symptoms were not as severe as alleged.[2] Tr. at 18.

Overall, the ALJ found that there was no evidence of any significant cognitive or psychological abnormalities. Accordingly, the ALJ found that

---

[1] See Findley v. Colvin, No. 1:15-cv-126-NAB, 2016 WL 4396164 at *3 (E.D. Mo. Aug. 18, 2016) (affirming the ALJ's finding that the claimant's depression and anxiety were not severe based in part on mental status exams).
[2] See Johnson v. Bowen, 866 F.2d. 274, 274-75 (8th Cir. 1989) (upholding an ALJ's decision based on claimants failure to follow prescribed treatment or seek medical attention).

Kathcart only had mild limitations in the functional areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Tr. at 19. The ALJ further bolstered this finding by discussing Kathcart's self-reported activities, which included handling finances, shopping, preparing meals, cleaning, spending time with others going out to eat, and talking on the phone.³

Even if the missing records from Dr. Lipsitz indicated that Kathcart had more than mild limitations, the other evidence in the record still provides substantial evidence to support the ALJ's decision. Since I may not reverse the ALJ's decision merely because substantial evidence in the record supports a contrary outcome or because I would have handled the case differently, Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011), the ALJ's failure to get additional information from Dr. Lipsitz did not prejudice Kathcart.

This conclusion is further reinforced by Kathcart's failure to provide any additional information in the record to show prejudice. Kathcart relies solely on the ALJ's statement that Dr. Lipsitz's "records are illegible and do not appear to contain mental status examination nor prescribing information, suggestive that they are likely annotations of subjective reports with no clinical objective findings" to

---

³ See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (using claimants ability to perform substantial daily activities, including caring for his children to support a finding of no disability).

support her claim. Although, the ALJ should have refrained from inferring the content of the records, the statement alone is not sufficient to demonstrate prejudice.[4]

### Sustained Work Activity

Kathcart also argues that the ALJ erred by failing to assess the her ability to sustain work activities as required by Social Security Ruling 96-8p. Social Security Ruling 96-8p requires ALJ's to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular basis" when assessing their RFC.

Although the ALJ did not explicitly state in her RFC discussion that she was considering Kathcart's ability to perform "sustained work activities," she did explicitly recognize that "an individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." Tr. at 14. Additionally, in determining Kathcart's RFC, the ALJ may not have explicitly stated that she was considering Kathcart's capacity to perform sustained work activities, but she provided a thorough analysis of Kathcart's medical records and testimony. Based on these records, the ALJ determined that Kathcart established the existence of impairments that appear to

---

[4] See Rose v. Astrue, No. 4:10-cv-1893-TCM, 2011 WL 5975933 at *9 (E.D. Mo. Nov. 30, 2011) (holding ALJ's failure to contact provider after finding his treatment notes illegible was not an error when there was substantial medical evidence that supported the ALJ's decision).

interfere with her functioning, but not to the extent that she is disabled. Tr. at 23. The ALJ cited medical records and physical exams that indicated Kathcart's psoriatic arthritis was under control. Tr. at 22. The ALJ also noted that although Kathcart's medical records indicate issues with chronic pain, follow-up notes from her treating physician indicated that SI injections had improved it 80% and her labs were overall fine. Tr. at 23. Additionally, despite her chronic pain and a limited and painful range of motion to her back, physical exams and objective medical tests were generally normal, with 5/5 strength, intact sensation and normal gait. Tr. at 23. In addition to the ALJ's review of the objective medical evidence, the ALJ considered Kathcart's daily activities, noting that despite her alleged limitations she cared for her two children most days on her own, handled finances, shopped, and performed light cleaning and laundry. Tr. at 21. Finally, the ALJ cited to Kathcart's continued work from July to November to further support the conclusion that Kathcart could maintain sustained work activity. Tr. at 19-24.

## CONCLUSION

The ALJ's determination that Kathcart is not disabled is supported by substantial evidence. The ALJ's written decision is clear, well-reasoned, and complies with the relevant laws and regulations.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Plaintiff's complaint is **DISMISSED** with prejudice.

A separate judgment is issued herewith.

_/s/ Rodney W. Sippel_
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March 2020.